UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>CUSTOMS AND TAX ADMINISTRATION OF THE KINGDOM OF DENMARK (SKATTEFORVALTNINGEN) TAX REFUND SCHEME LITIGATION<br><br>This document relates to: All Cases. | MASTER DOCKET<br><br>18-md-2865 (LAK) |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION FOR ISSUANCE OF A REQUEST FOR INTERNATIONAL JUDICIAL
ASSISTANCE TO OBTAIN EVIDENCE (LETTERS ROGATORY)**

HUGHES HUBBARD & REED LLP
William R. Maguire
Marc A. Weinstein
Neil J. Oxford
Dustin P. Smith
One Battery Park Plaza
New York, New York 10004
(212) 837-6000

*Counsel for Plaintiff Skatteforvaltningen
(Customs and Tax Administration of the
Kingdom of Denmark)*

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Blagman v. Apple, Inc.*, No. 12 Civ. 5453 (ALC)(JCF), 2014 WL 1285496
  (S.D.N.Y. Mar. 31, 2014) .................................................................................................5

*Chen-Oster v. Goldman, Sachs & Co.*, 293 F.R.D. 557 (S.D.N.Y. 2013) ......................................6

*Elliott Assocs. v. Republic of Peru*, No. 96 CIV. 7916 (RWS), 1997 WL 436493
  (S.D.N.Y. Aug. 1, 1997) ...................................................................................................6

*Joseph v. Gnutti Carlo S.p.A.*, No. 15-cv-8910 (AJN), 2016 WL 4083433
  (S.D.N.Y. July 25, 2016) ..................................................................................................5

*Lantheus Medical Imaging, Inc. v. Zurich American Ins. Co.*, 841 F. Supp. 2d 769
  (S.D.N.Y. 2012) ............................................................................................................5, 6

*In re Optimal U.S. Litig.*, 837 F. Supp. 2d 244 (S.D.N.Y. 2011) ....................................................6

*Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for S. Dist. of
  Iowa*, 482 U.S. 522, 107 S. Ct. 2542 (1987) .....................................................................6

**Statutes and Rules**

28 U.S.C. § 1781(b)(2) ...................................................................................................................5

Fed. R. Civ. P. 26 ............................................................................................................................5

Fed. R. Civ. P. 28(b)(1)(B) .............................................................................................................5

Plaintiff SKATTEFORVALTNINGEN, the Customs and Tax Administration of the Kingdom of Denmark ("SKAT"), respectfully submits this memorandum of law in support of its motion (the "Motion") for the issuance of letters of request to obtain documents and limited testimony from witnesses in the Cayman Islands pursuant to the Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters ("Hague Evidence Convention").  Proposed letters rogatory are attached as Exhibits 1-A – 1-M to the Declaration of Neil J. Oxford, dated April 27, 2020 ("Oxford Decl.").

## PRELIMINARY STATEMENT

SKAT seeks to recover $2.1 billion that it paid out in fraudulent dividend withholding tax ("DWT") refund claims.  The Defendants are pension plans (the "Plans") and affiliated individuals in the United States.  The Plans submitted to SKAT fraudulent DWT refund claim applications that falsely claimed that the Plans owned shares in Danish companies listed on the OMX Copenhagen 20 Index ("Danish Securities").  SKAT alleges the applications were fraudulent because the Plans did not actually own the shares of Danish Securities that they claimed to own, did not earn the dividends they claimed to have earned, and were not entitled to the tax refunds they claimed.  These applications were also fraudulent because the claimants falsely represented that they met the qualifications set forth in the double taxation treaty between Denmark and the United States for a full repayment of the tax withheld on dividends.  By submitting these claims, Defendants were able to receive refunds of DWT to which they were not entitled.

The fraudulent applications for DWT refunds that were submitted by Defendants that used custodians associated with Sanjay Shah[1] (representing the vast majority of the Defendants in these cases) were the culmination of a tax refund scheme that involved a number of entities, including entities located in the Cayman Islands ("Caymans") that are the subject of the letters of request discussed herein, to create false, fictitious book entry transactions and records that purported to record the purchase, transfer, or ownership of Danish Securities. These Defendants relied on third parties located in the Caymans (and elsewhere) to conduct the false, fictitious transactions that generated records purporting to evidence their purchase of shares. These Defendants purported to purchase fictitious shares from themselves in a circular transaction, the true nature of which was obscured by using a variety of trading counterparties that, in fact, were commonly owned and acting in concert. In essence, the buyer would buy shares from a seller that did not own them; and the seller purported to borrow the (fictitious) shares from the buyer, using intermediaries to conceal the sham nature of the transaction: the Plan Defendant would buy the shares from a short seller, and lend the shares to an intermediary (or intermediaries), who would lend the shares to the short seller that had "sold" the shares to the Plan Defendant. (The short sellers, stock loan intermediaries, and forward counterparties together, "Cayman Trading Counterparties"). The legs of the fraudulent trading—the sale of shares from the purported short seller to the Plan Defendant; the stock loan from the Plan Defendant to the stock loan intermediary; and the loan from the stock loan intermediary to the short seller—all settled on the same date and at the same custodian controlled by Sanjay Shah. The fraudulent trading scheme generated purported trading records, without any need to

---

1. Sanjay Shah is alleged to be the central organizer of this fraudulent scheme and is a defendant in SKAT's litigation in England.

exchange actual shares or for any actual shares to even exist. These Defendants also purported to sell shares in a forward and/or futures contract to additional counterparties. Attached as Oxford Decl. Ex. 4 is a document from Solo Capital Partners, one of the Shah-controlled custodians used by these Defendants, and sets out the fraudulent trading structure described above, with Solo Capital Partners acting as the custodian.[2] The fraudulent transactions illustrated in Oxford Decl. Ex. 4 and described herein were then used by purported custodians to create false "credit advices," "income advices," "tax vouchers," or similar documents (each a "Credit Advice") that these Defendants submitted to SKAT to support Defendants' false DWT refund applications to SKAT.

These Defendants also relied on Cayman third parties ("Cayman Conduit Entities") to distribute the money obtained from SKAT in a way that obfuscated the true beneficiaries of the fraudulent applications. Upon information and belief, through false invoices, charging for fictitious services, and other arrangements, the Cayman Conduit Entities channeled the proceeds of the fraudulent applications to various participants in the fraud, including Defendant-controlled entities and Cayman Trading Counterparties.

SKAT respectfully requests that this Court issue letters rogatory seeking documentary evidence and limited testimony relating to the Cayman Trading Counterparties and Cayman Conduit Entities (together, "Cayman Third Parties") from the following corporate service providers to the Cayman Third Parties ("CSPs"): Bell Rock Corporate Services; Campbells Corporate Services Limited; CO Services Cayman Limited; DMS Corporate Services

---

2. Oxford Decl. Ex. 4 was obtained from a production made by the defendants in SKAT's action pending before the Dubai International Financial Centre Courts (the "DIFC court") against Elysium Global (Dubai) Limited and Elysium Properties Limited, another Shah-controlled company (together, "Elysium") that was in possession of documents from Solo Capital Partners.

3

Ltd.; Forbes Hare Trust Company Limited; Genesis Trust & Corporate Services Ltd.; Harneys Services (Cayman) Limited; Intertrust Corporate Services (C.I.) Limited; Ocorian (Cayman) Limited; Sterling Trust (Cayman) Limited; Trident Trust Company (Cayman) Limited; Vistra (Cayman) Limited; and Walkers Corporate Limited.

Specifically, SKAT seeks from the CSPs, with respect to each Cayman Third Party that is a limited company or limited partnership: books of account; customer due diligence records obtained by the CSP pursuant to the Anti-Money Laundering Regulations; correspondence between clients of record and the CSP; agreements for the provision of corporate services between the CSP and the Cayman Third Parties, or those acting on their behalf; and invoices issued by the CSP to any of the Cayman Third Parties, or those acting on their behalf, and payment records showing the payment of such invoices, including, but not limited to, (i) details of the bank from which payments were made and (ii) supporting information to enable payments to be made including payee due diligence records obtained. SKAT seeks from the CSPs, with respect to each Cayman Third Party that is a limited company: certificate of incorporation; articles of association; memorandum of association; register of shareholders; register of directors; register of beneficial owners; in respect of the Cayman Third Parties that have been voluntarily wound up, the documents filed with the Registrar of Companies under Order 13 rule 2 of the Companies Winding Up Rules, including: (i) declaration of solvency filed pursuant to the Companies Winding Up Rules, (ii) notice of the winding up, (iii) voluntary liquidator's consent to act, and (iv) final return; correspondence between introducers and the CSP; and correspondence between directors and the CSP. SKAT seeks from the CSPs, with respect to each Cayman Third Party that is a limited partnership: certificate of registration; declaration filed by the general partners to effect registration of the limited partnership pursuant

to section 49 of the Partnership Law (2013 Revision); declaration filed by the general partners pursuant to section 51 of the Partnership Law (2013 Revision); records identifying the beneficial owners pursuant to the Anti-Money Laundering Regulations; and correspondence between partners and the CSP.  This information is relevant to establish that the Cayman Third Parties were controlled by or affiliated with Defendants and Shah, and that the Plans were not actual holders of the Danish Securities.

The CSPs are not parties to this lawsuit, are citizens of another country, and are not otherwise subject to the jurisdiction of this Court.  Accordingly, SKAT respectfully requests that the Court issue letters rogatory to the courts of the Cayman Islands.  SKAT contacted lead counsel for the Defendants to inform them of the relief sought herein, and has received no objections to this Motion from Defendants.

## **LEGAL STANDARD**

Letters rogatory are the means by which a court in one country can formally request that a court in another country lend its judicial assistance in obtaining evidence or performing some other judicial act.  *Lantheus Medical Imaging, Inc. v. Zurich American Ins. Co.*, 841 F. Supp. 2d 769, 775-76 (S.D.N.Y. 2012).  Rule 28(b)(1)(B) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1781(b)(2) authorize federal courts to issue letters rogatory that enable a U.S. litigant to obtain non-party evidence from a foreign entity.  Letters can be sent directly from this Court without transmittal by the State Department.  28 U.S.C. § 1781(b)(2).

In considering an application for issuance of letters rogatory, United States courts apply the discovery principles embodied by Rule 26.  The party seeking discovery bears the burden of demonstrating that the evidence sought is relevant.  *Blagman v. Apple, Inc.*, No. 12 Civ. 5453 (ALC)(JCF), 2014 WL 1285496, at *4 (S.D.N.Y. Mar. 31, 2014).  "While not 'unlimited, relevance, for purposes of discovery, is an extremely broad concept.'"  *Joseph v.*

*Gnutti Carlo S.p.A.*, No. 15-cv-8910 (AJN), 2016 WL 4083433, at *1 (S.D.N.Y. July 25, 2016) (quoting *Chen-Oster v. Goldman, Sachs & Co.*, 293 F.R.D. 557, 561 (S.D.N.Y. 2013)). Once relevance is shown, the burden shifts to the party opposing discovery to show that the discovery is improper. *Id*.

## ARGUMENT

### I. LETTERS ROGATORY ARE THE PROPER DISCOVERY DEVICE

The United States and the Cayman Islands are both parties to the Hague Evidence Convention. Hague Evidence Convention Status Table, HCCH (Mar. 1, 2019), https://www.hcch.net/en/instruments/conventions/status-table/?cid=82. Accordingly, this Court has the authority to send the attached letters of request to the Cayman Islands.

Recourse to the Hague Evidence Convention is "available whenever [it] will facilitate the gathering of evidence by the means authorized in the Convention." *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for S. Dist. of Iowa*, 482 U.S. 522, 541, 107 S. Ct. 2542, 2554 (1987). Letters rogatory are appropriately used to obtain evidence from witnesses who cannot be compelled to appear in a United States court. *See In re Optimal U.S. Litig.*, 837 F. Supp. 2d 244, 259 (S.D.N.Y. 2011). Where, as here, the witnesses subject to the motion are not parties to the lawsuit and are not otherwise subject to the jurisdiction of the U.S. court, it is appropriate to turn to the Hague Evidence Convention. *Elliott Assocs. v. Republic of Peru*, Nos. 96 CIV. 7917 (RWS), 96 CIV. 7916 (RWS), 1997 WL 436493, at *2 (S.D.N.Y. Aug. 1, 1997); *Lantheus*, 841 F. Supp. 2d at 782 (S.D.N.Y. 2012) ("parties seek, and U.S. courts will usually issue, letters rogatory where the court otherwise lacks jurisdiction to compel discovery"). "The party opposing the issuance of a letter of request must show some good reason to deny the application." *Elliott*, 1997 WL 436493, at *2.

## II.     SKAT'S REQUESTS ARE RELEVANT TO THE CLAIMS IN THIS ACTION

SKAT seeks documents and limited testimony from the CSPs of Cayman Third Parties, which helped Defendants defraud SKAT by: (i) engaging in purported share trading to generate fraudulent trading records Defendants relied upon as evidence of share ownership, and (ii) acting as conduits to distribute the proceeds of the refund applications in a way that obfuscated the true beneficiaries of the refund claims. Additional information regarding the structure of the fraudulent scheme and the role of each of the Cayman Third Parties is contained in the Oxford Declaration. (*See* Oxford Decl. ¶¶ 26-29.)

The issue of whether the Defendants held the shares that they claimed to own is central to these proceedings. Specifically, SKAT has alleged in the complaints commencing these actions that the Defendants' applications "were fraudulent because the claimants did not own the shares that they claimed to own, did not earn the dividends they claimed to have earned, and were not entitled to the tax refunds they claimed." (Oxford Decl. Ex. 2 ¶ 4.) Accordingly, the documents that SKAT seeks from the CSPs of the Cayman Trading Counterparties are expected to demonstrate that the Cayman Trading Counterparties are owned or controlled by Defendants, Shah, or other entities involved in defrauding SKAT into paying DWT refunds on shares that Defendants never actually owned.

The manner in which the proceeds of the refund applications were channeled to the various participants in the fraud is also a central issue in this case. Specifically, SKAT has alleged that Defendants "obtain[ed] proceeds from withholding tax refund claims, directly or indirectly, to which they were not entitled." (Oxford Decl. Ex. 2 ¶ 78. *See also id.* ¶¶ 54, 82). Accordingly, the documents that SKAT seeks from the CSPs of the Cayman Conduit Entities are expected to demonstrate that the Cayman Conduit Entities are owned or controlled by

7

Defendants, Shah, or other entities involved in perpetuating the fraud. These connections will evidence how the refunds were distributed to parties who were not entitled to them.

In the letters of request, SKAT seeks limited testimony to verify the accuracy and provenance of the documents provided by the CSPs. This limited testimony is intended to address any issues of admissibility that may arise in future proceedings before this Court and to avoid additional costs related to such issues. To the extent possible, SKAT will seek certifications from the CSPs consistent with Federal Rule of Evidence 902(12) to obviate the need for testimony.

In sum, SKAT has reason to believe that the Cayman Third Parties served critical roles in the DWT refund fraud, and expects that the documents and limited testimony requested from the CSPs will evidence the involvement of the Cayman Third Parties and confirm the existence of the overall scheme.

## **CONCLUSION**

For the reasons set forth above, SKAT respectfully requests that the Court grant its Motion for Issuance of a Request for International Judicial Assistance to Obtain Evidence.

Dated: New York, New York
April 27, 2020

HUGHES HUBBARD & REED LLP

By: ___/s/ Neil J. Oxford_____
   William R. Maguire
   Marc A. Weinstein
   Neil J. Oxford
   Dustin P. Smith
One Battery Park Plaza
New York, New York 10004-1482
Telephone: (212) 837-6000
Fax: (212) 422-4726
bill.maguire@hugheshubbard.com
marc.weinstein@hugheshubbard.com
neil.oxford@hugheshubbard.com
dustin.smith@hugheshubbard.com

*Counsel for Plaintiff Skatteforvaltningen (Customs and Tax Administration of the Kingdom of Denmark)*